# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles R. Norgle | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 3843 | **DATE** | 8/19/2002 |
| **CASE TITLE** | Smith vs. Grand Victoria Casino | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   Before the court on August 16, 2002 was Defendant's motion for summary judgment. This court entered summary judgment for the Defendant, terminating the case. The clerk shall enter judgment for the Defendant pursuant to Fed. R. Civ. Pro. 58.

*Charles R. Norgle*

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | AUG 21 2002 | |
| | Notified counsel by telephone. | date docketed | 28 |
| ✔ | Docketing to mail notices. | CDY | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | date mailed notice | |
| | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PATRICIA SMITH                  )
                                )        DOCKETED
                Plaintiff,      )
                                )   No. 01 C 3843    AUG 2 1 2002
        v.                      )
                                )   HONORABLE CHARLES R. NORGLE
                                )
GRAND VICTORIA CASINO,          )
                                )
                Defendant.      )

## OPINION AND ORDER

**Charles R. Norgle Sr., District Judge**

Before the court is Defendant's motion for summary judgment brought pursuant to Fed. R.

Civ. P. 56. For the following reasons, Defendant's motion is granted.

## I. BACKGROUND[1]

Plaintiff, Patricia Smith, was previously employed by Defendant, Grand Victoria Casino

("GVC"). GVC is a river-boat gambling establishment located in Elgin, Illinois. Smith began

working at GVC as a cashier in the gift shop. Eventually, Smith was transferred to the position of

slot club hostess. "As a slot club hostess, [Smith] was required to approach customers and sign up

new customers with gambling 'accounts,' redeem cash from customer accounts, add 'points' to

customer accounts when presented with a valid coupon, mingle with customers, and provide general

customer services." (Def.'s Mot. for Summ. J. p. 2).

Normally a customer at GVC acquires a gambling account. A gambling account is used by

GVC to keep track of the amount of money a player gambles. A customer with a gambling account

---

[1] All facts are taken from the parties Local Rule 56.1 statements, accompanying briefs.
Disputed facts are noted in the text.



accumulates points on his account based upon the amount of money he gambles or by redeeming promotional coupons sent to all customers with accounts. These points can then be redeemed for money. It was Smith handling of the gambling accounts that lead to her termination.

In December of 1999, Smith began a romantic relationship with Joe McClenthen, a customer. Eventually McClenthen began living with Smith. GVC became aware of Smith's relationship when McClenthen's wife contacted them and requested that GVC put an end to the relationship. Sharon McGill, Director of Human Services, spoke with Smith about the issue. Because GVC does not have a policy against dating customers, Smith was merely told to avoid any situations that could lead to a conflict of interest between a customer and GVC.

In the summer of 2000, Smith complained to GVC about another employee's actions, Donald Huevelman. Smith complained that Huevelman had acquired a copy of her late husband's death certificate and was showing it to other employees as a way to harass and embarrass Smith. Smith complained to three different individuals, requesting that Huevelman be terminated for his actions. Huevelman was not terminated at that time,[2] but he was reprimanded by Human Resources.

In February of 2001, approximately six months after Smith complained to GVC about Huevelman's conduct, her own conduct came under suspicion. Nancy Fierok, Smith's supervisor, discovered that Joe McClenthen had two gambling accounts under different names. Fierok questioned Smith, and Smith admitted to setting up the second account for McClenthen. The second account was set up using a different name, Joe Mac, there was no social security number given, and

---

[2] Although Huevelman was not terminated at that time by GVC, he was terminated later for various infractions.

2

the mailing address was Smith's residence. Upon learning of Smith's actions, GVC terminated her employment for violation of GVC policies regarding conflict of interest and fraud.

Smith has now filed a claim against GVC for violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. §§ 2000e et seq. GVC, in turn has filed a motion for summary judgment brought pursuant to Fed. R. Civ. P. 56(1). The court grants GVC's motion for summary judgment for the following reasons.

## II. DISCUSSION

**A.     Summary Judgment Standard**

Summary judgment is permissible when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The nonmoving party cannot rest on the pleadings alone, but must identify specific facts, see Cornfield v. Consolidated High School District No. 230, 991 F.2d 1316, 1320 (7th Cir. 1993), that raise more than a mere scintilla of evidence to show a genuine triable issue of material fact. See Murphy v. ITT Technical Services, Inc., 176 F.3d 934, 936 (7th Cir. 1999); see also Shank v. William R. Hague, Inc., 192 F.3d 675, 682 (7th Cir. 1999) (stating that a party opposing summary judgment must present "what evidence it has that would convince a trier of fact to accept its version of events."). A defendant is entitled to put the plaintiff to his proofs and demand a showing of the evidence. See e.g. Navarro v. Fuji Heavy Industries. Ltd., 117 F.3d 1027, 1030 (7th Cir. 1997). If the plaintiff fails to come up with the required proof, the defendant is entitled to summary judgment. See id. It bears repeating that the plaintiff must present evidence, rather than speculation and conclusions without factual support. See Rand v. CF Industries. Inc., 42 F.3d 1139, 1146-47 (7th Cir. 1994).

**B.     Gender Discrimination Claims**

Under Title VII, Smith is required to provide evidence supporting her gender discrimination claims by one of two methods, either directly or indirectly. Lim v. Trs. of Ind. Univ., -F.3d-, No. 01-4295, 2002 U.S. App. LEXIS 14534, at *10 (7th Cir. July 14 2002).  The direct method is established by putting in enough evidence (whether direct or circumstantial) to demonstrate that GVC discriminated against Smith because of her gender. See, e.g., Troupe v. May Dep't Stores Co., 20 F.3d 734, 736 (7th Cir. 1994).  Direct evidence of discrimination is "smoking gun" evidence, such as "[w]e fired you because of your [gender]." Robin v. Espo Eng'g Corp., 200 F.3d 1081, 1088 (7th Cir. 2000) (analyzing the McDonnell-Douglas test in an ADA/age discrimination case.)  Smith may also use circumstantial evidence to show GVC's discriminatory intent.  The types of circumstantial evidence that Smith can present are: "suspicious timing, ambiguous statements, behavior toward or comments directed at other [people] in the protected group, and other evidence from which an inference of discriminatory intent might be drawn . . . ." Huff, 122 F.3d at 380.  Smith has provided no direct or circumstantial evidence regarding GVC's employment action.  Therefore, the court looks to the second, indirect method, to analyze Smith's claim.

The second method for proving discrimination is the so-called McDonnell-Douglas, burden shifting, method.  The framework for the frequently used burden-shifting method was first set out in McDonnell-Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973).  Under the McDonnell-Douglas method of proving discrimination, a plaintiff must first establish a prima facie case of discrimination. See Adusumilli v. City of Chicago, 164 F.3d 353, 362 (7th Cir. 1998).  The Seventh Circuit has consistently held that "the prima facie case under McDonnell Douglas must be established and not merely incanted." See, e.g., Coco v. Elmwood Care, 128 F.3d 1177, 1178 (7th Cir. 1997).

In order to establish a prima facie case Smith must demonstrate that: (1) she is a member of a protected class; (2) she was meeting her employer's legitimate performance expectations; (3) she suffered an adverse employment action; and (4) the employer treated similarly situated male

employee's more favorably.  See Cheek v. Peabody Coal Co., 97 F.3d 200, 204 (7th Cir. 1996). If

Smith cannot establish a prima facie case, the analysis ends and her claims fail. Plair, 105 F.3d at

347 (citing Randle v. LaSalle Telecommunications, 876 F.2d 563, 569 (7th Cir. 1989)). If a plaintiff

is unable to establish a prima facie case of employment discrimination under McDonnell Douglas,

an employer should not be subjected to a pretext inquiry. Peele v. Country Mut. Ins. Co., 288 F.3d

319, 327 (7th Cir. 2002); Contreras v. Suncast Corp., 237 F.3d 756, 761 (7th Cir. 2001); Robin, 200

F.3d at 1090; Coco, 128 F.3d at 1179; Plair v. E.J. Brach & Sons, 105 F.3d 343, 347 (7th Cir. 1997).

If Smith succeeds in demonstrating that there is a prima facie case with evidentiary-quality

materials, the burden shifts to GVC to show that it acted without any discriminatory intent when it

terminated Smith. Russell v. Board of Trs., 243 F.3d 336, 341 (7th Cir. 2001) (citing St. Mary's

Honor Center v. Hicks, 509 U.S. 502, 508 (1993)).  The defendant's evidence of a good reason for

terminating the plaintiff "must be devoid of circumstances from which it can be inferred that there

was a real though subtle purpose of discrimination." Russell, 243 F.3d at 341  If the defendant does

so, the burden shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the

proffered reason is pre-textual. See id.; see also Jackson v. E.J. Brach Corp., 176 F.3d 971, 983 (7th

Cir.1999) (citing McDonnell Douglas, 411 U.S. at 804); Robin, 200 F.3d at 1088.

The focus of the pretext inquiry is whether the defendant's articulated legitimate reason was

honest, not whether it was accurate, wise, or well-considered. See Stewart v. Henderson, 207 F.3d

374, 378 (7th Cir. 2000); see also Tincher v. Wal-Mart Stores, Inc., 198 F.3d 1125, 1129 (7th Cir.

1997) (citing Helland v. South Bend Community Sch. Corp., 93 F.3d 327, 330 (7th Cir. 1996)). In

short, pretext means a lie, "and without proof of a lie, no inference of discriminatory motive can be

drawn." Olsen v. Marshall & Ilsley Corp., 267 F.3d 597, 602 (7th Cir. 2001); see also Jackson, 176

F.3d at 983 (quoting <u>Russell v. Acme-Evans Co.</u>, 51 F.3d 64, 68 (7th Cir. 1995) ("Pretext in this context means 'a lie, specifically a phony reason for some action.'")). In order to prove pretext Smith's burden is to rebut the articulated reasons for her termination. See <u>Plair</u>, 105 F.3d at 349; <u>see also Smith v. General Scanning, Inc.</u>, 876 F.2d 1315, 1319 (7th Cir. 1989). "[A] reason cannot be proved to be a pretext for discrimination unless it is shown both that the reason was false and that discrimination was the real reason." <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 515 (1993). Despite these shifting burdens of production, the ultimate burden of persuasion always remains with the plaintiff. See <u>Adusumilli</u>, 164 F.3d at 362.

Smith is not able to set forth the four elements needed to show a prima facie case of discrimination based on the evidence presented. There is no question as to the first and third elements necessary to establish a prima facie case of gender discrimination. Smith is a member of a protected class based on her gender, she has suffered an adverse employment action and her employment with GVC was terminated. Smith is also able to set forth the second element needed to establish her prima facie case, although it is contested by GVC that she was not performing to their legitimate expectations.

GVC argues, circularly, that because Smith was fired she was therefore not meeting GVC's employment expectations. "The 'legitimate expectations' element in the ubiquitous burden-shifting formula of <u>McDonnell Douglas</u> [is crucial]." <u>Coco</u>, 128 F.3d at 1179. If a plaintiff fails to demonstrate that she was meeting her employer's legitimate employment expectations at the time of her termination, the employer should not be "put to the burden of stating the reasons for [her] termination." <u>Coco</u>, 128 F.3d at 1179; <u>see also Brummett v. Lee Enterprises, Inc.</u>, 284 F.3d 742, 745

(7th Cir. 2002); Contreras, 237 F.3d at 761; Espo Eng'g Corp., 200 F.3d at 1090; Biolchini v. Gen. Elec. Co., 167 F.3d 1151, 1154 (7th Cir. 1999); Plair, 105 F.3d at 347.

Generally, the issue of whether an employee was meeting an employer's legitimate employment expectations is not the employee's past performance but "whether the employee was performing well at the time of [her] termination." Karazanos v. Navistar Intern. Transp. Corp., 948 F.2d 332, 336 (7th Cir. 1991); see also Fortier v. Ameritech Mobile Communications, Inc., 161 F.3d 1106, 1113 (7th Cir. 1998). Furthermore, prior job performance "evaluations, standing alone, [do not] create a genuine issue of triable fact when . . . there have been substantial alterations in the employee's responsibilities and supervision in the intervening period." Peele v. Country Mut. Ins. Co., 288 F.3d 319, 328-29 (7th Cir. 2002) (quoting Fortier, 161 F.3d at 1113 (emphasis added)).

Smith was performing her job to the expectations of GVC before she was fired. Smith had no bad evaluations, no write-ups, or complaints by her supervisors or co-workers as to how she was performing her job. GVC never had any problems with Smith's performance at work except for the single instance that led to her termination. The only issue regarding her job performance was her relationship with McClenthen, to which she was told not to mix business with pleasure. GVC's argument that because Smith defrauded the company by creating a second gambling account for McClenthen and was therefore not satisfying the legitimate expectations is not persuasive on the issue of establishing a prima facie case. Rather it is persuasive on the overall issue of why GVC terminated Smith, as described later.

Smith fails to present evidence to substantiate the final element of a prima facie case: whether a similarly situated male employee was treated more favorably. To meet her burden of demonstrating that another employee is "similarly situated," Smith must show that there is someone who is directly comparable to her in all material respects. Greer, 267 F.3d at 728; Radue v.

7

Kimberly-Clark Corp., 219 F.3d 612, 618 (7th Cir. 2000); Spath v. Hayes Wheel's Int'l-Ind., Inc.,
211 F.3d 392, 396 (7th Cir. 2000). "[A] court must look at all relevant factors, the number of which
depends on the context of the case." Radue, 219 F.3d at 617. Such factors include whether the
employees "dealt with the same supervisor" and were "subject to the same standards." Id. 219 F.3d
at 617-18.

Smith cannot point to any individual, male or female, similarly situated to her that did not
suffer her same fate. Smith attempts to categorize Huevelman as a similarly situated employee who
was not terminated immediately for his policy violations, because of his gender. Huevelman in not
similarly situated to Smith. Smith and Huevelman did not have the same supervisors, work in the
same area, or violate the same GVC policies. GVC acknowledges that Huevelman did violate
several of GVC policies. Huevelman took long lunches, brought pizza to his work station, left his
work station without permission, and even passed Smith's husband's death certificate around to the
other employees. GVC reprimanded Huevelman for all of these violations. Huevelman's actions
are indicative of an unacceptable employee, but not someone who is defrauding the company.

Smith knowingly and willfully knowingly violated GVC policy by signing McClenthen up
for a second gambling account without the correct personal information. Smith fails to present any
evidence that shows GVC treated a similarly situated male employee differently. In fact, GVC
presents evidence that it terminated a male employee for actions similar to Smith's. Therefore,
Smith has not and cannot establish that there are similarly situated males who were treated better
because of their gender.

By failing to establish that GVC treated similarly situated male employee's more favorably
Smith cannot demonstrate the necessary elements needed to establish a prima facie case. This would

normally end the inquiry of the court, but with an abundance of caution the court will assume that Smith established a prima facie case and analyze whether GVC's reasons for terminating Smith are pre-textual.

Smith fails to demonstrated that the reasons stated by GVC for her termination were pre-textual. GVC fired Smith because she admittedly set up a second gambling account for McClenthen leaving out the necessary information that allows GVC to routinely monitor its system for secondary accounts. Smith omitted the information in an attempt to allow McClenthen to gain some benefit from the two gambling accounts.

Smith attempts to rebuff GVC's reason for terminating her employment by making unsubstantiated claims that she was fired for complaining about Huevelman's actions. Smith proffers no evidence to support her theories, only her own speculations and assumptions. Mere speculation and conclusions without factual support are not enough to defeat summary judgment. See Rand, 42 F.3d 1146-47. Smith's argument also has no merit because there is no temporal connection between the time frame of when Smith complained about Huevelman's conduct and when she was terminated. "'[A]s the temporal distance between [the claimant's] protected expression and the adverse action increases, it is less likely that there is a causal link between the two events.'" McClendon v. Indiana Sugars, 108 F.3d 789, 797 (7th Cir. 1997) (quoting McKenzie v. Illinois Dep't of Transp., 92 F.3d 473, 485 (7th Cir. 1996)). Smith complained about Huevelman's actions approximately six months before she was terminated for setting up a second gambling account for McClenthen.

Smith also asserts that GVC's reason for firing her was pre-textual because the gambling accounts are virtually worthless, the only real advantage of which is to GVC. Smith again has no

evidence to support her accusations. The facts presented show that the gambling accounts do give value to customers. GVC mails coupons to customers that can be redeemed for cash, a real benefit. GVC has proffered a legitimate reason for terminating Smith, to which she can not substantially rebut or show that it is merely pre-textual. An employer is not precluded from taking action to nip fraud in the bud rather than wait until a more serious injury is sustained.

GVC's motion for summary judgment is meritorious. Smith has been unable to demonstrate the necessary elements needed to establish a prima facie case of gender discrimination or that GVC's reasons for termination were pre-textual. Smith has failed to establish her gender discrimination claim

## III. CONCLUSION

Defendant's motion for summary judgment brought pursuant to Fed. R. Civ. P. 56 is granted. IT IS SO ORDERED.

ENTER:

_____

CHARLES RONALD NORGLE, SR., District Judge

DATED: _8-16-02_